IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

JAMES W. MCGRIFF,
      Petitioner,

vs.                           Case No.:  4:19cv16/MW/EMT

MARK S. INCH,
      Respondent.
_____/

## **REPORT AND RECOMMENDATION**

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (ECF No. 1).  Respondent ("the State") filed an answer and relevant portions of the state court record (ECF No. 23).  Petitioner filed an amended reply (ECF No. 26).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues presented by the parties, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rule 8(a), Rules Governing Section 2254 Cases.  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* ECF No. 23).[1]  Petitioner was charged in the Circuit Court in and for Gadsden County, Florida, Case No. 2013-CF-6204, with one count of second degree murder (Count I), one count of possession of a firearm by a convicted felon (Count II), and one count of carrying a concealed firearm (Count III) (Ex. 1 at 58).  The trial court initially granted the defense's motion to sever Count II for trial (*see id.* at 83–84, 109–10).  But during jury selection for trial on Counts I and III, the court ruled that if Petitioner asserted self-defense to Count I, the court would allow the jury to hear that Petitioner was a convicted felon (*see* Ex. 2 at 4–15).  While preserving its objection to that ruling, the defense agreed to try all three Counts together (*id.*).  At the conclusion of trial, on October 3, 2013, the jury found Petitioner guilty of the lesser charge of manslaughter on Count I, and guilty as charged on Counts II and III (Ex. 1 at 173–74, Exs. 3, 4, 5, 6).  On October 9, 2013, the court sentenced Petitioner to thirty (30) years in prison on Count I (with a 3-year mandatory minimum), fifteen (15) years in prison on Count II (with a 3-year

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with the State's answer (ECF No. 23).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

mandatory minimum), and five (5) years in prison on Count III, with all sentences running concurrently and with pre-sentence jail credit of 491 days (Ex. 1 at 176–85; Ex. 7).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D13-6204 (Ex. 8). The First DCA initially reversed the convictions and sentences on all three Counts (Ex. 11). *McGriff v. State*, No. 1D13-6204, 2015 WL 426722 (Fla. 1st DCA Feb. 3, 2015). The Sate filed a motion for rehearing (*see id.*). Petitioner responded in opposition to the motion (*see id.*). The First DCA granted the State's motion for rehearing in part and substituted the following opinion in place of its original opinion:

PER CURIAM.

We grant Appellee's motion for rehearing in part and substitute this opinion in place of our original opinion.

Appellant shot and killed a man during an argument over a backyard dice game in 2011. He was convicted of three felonies[FN 1] and sentenced to concurrent prison terms, the longest of which is 30 years. He raises four issues in this direct appeal, and we find merit in two.

[FN 1: Manslaughter (count I), possession of a firearm by a convicted felon (count II), and carrying a concealed firearm (count III).]

First, we agree with Appellant that the trial court abused its discretion when it instructed the jury that "if [Appellant] was engaged in an unlawful activity, [his] use of deadly force was not justified if he could

have reasonably and safely avoided the use of deadly force by retreating."  This was an incorrect statement of then-existing law. Section 776.012(1), Florida Statutes (2010)—the sole statute on which Appellant's self-defense claim was based—provided that "a person is justified in the use of deadly force and *does not have a duty to retreat* if [h]e . . . reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself . . . or to prevent the imminent commission of a forcible felony" (emphasis added), and this court held in *Garrett v. State*, 148 So. 3d 466, 471 (Fla. 1st DCA 2014), that "[t]he fact that [the defendant] was a convicted felon in unlawful possession of a firearm did not apply to the jury's consideration of whether [he] had a duty to retreat under section 776.012(1)."  *Accord Dorsey v. State*, 149 So. 3d 144, 147 (Fla. 4th DCA 2014) (*Dorsey II* ); *Rios v. State*, 143 So. 3d 1167, 1169–70 (Fla. 4th DCA 2014); *Hardison v. State*, 138 So. 3d 1130, 1134 (Fla. 1st DCA 2014);[FN 2] *see also Hill v. State*, 143 So. 3d 981, 984 (Fla. 4th DCA 2014) (en banc) (holding that the defense provided in section 776.012(1) is available to persons engaged in an unlawful activity and explaining that "[t]he addition of the words 'and does not have a duty to retreat' to section 776.012 had the effect of abrogating the common law duty to retreat before using deadly force outside the home under the circumstances indicated therein"); *Little v. State*, 111 So. 3d 214, 219–22 (Fla. 2d DCA 2013) (holding that a defendant engaged in an unlawful activity when he or she uses force cannot obtain immunity from prosecution based on section 776.013(3), but he or she can obtain immunity based on section 776.012(1)).  This error was preserved below and was not harmless because the erroneous instruction effectively eliminated Appellant's sole defense and was emphasized several times by the prosecutor during closing argument.[FN 3]

> [FN 2:  We recognize that the trial court did not have the benefit of *Garrett* or the other cited decisions at the time of trial, and we also recognize that the *Dorsey* opinion relied on by the trial court to craft the jury instructions did hold that the common law duty to retreat continues to apply to a defendant who is engaged in an unlawful activity at the time he is attacked.  *Dorsey v. State*, 74 So.

3d 521 (Fla. 4th DCA 2011) (*Dorsey I*); *accord Morgan v. State*, 127 So. 3d 708, 715–17 (Fla. 5th DCA 2013); *Darling v. State*, 81 So. 3d 574, 578–79 (Fla. 3d DCA 2012). However, the focus of *Dorsey I* was on the defense provided by section 776.013(3), not section 776.012(1). The same is true of *Morgan* and *Darling*. Moreover, in a subsequent opinion in the *Dorsey* case, the Fourth District held that it was fundamental error to instruct the jury that a defendant engaged in an unlawful activity had a duty to retreat when the defendant's self-defense claim was based on section 776.012(1). *See Dorsey II*, 149 So. 3d at 147.]

[FN 3: During his initial closing argument, the prosecutor emphasized Appellant's duty to retreat and argued that the evidence showed that Appellant could have gotten away from the victim by running along the fence the victim pushed him into. Defense counsel responded in his closing argument that Appellant could not have run away because he was backed against the fence and the victim was in his escape route. In rebuttal closing argument, the prosecutor again emphasized Appellant's duty to retreat, arguing that "[t]he jury instructions say it is his duty, as a convicted felon with a firearm, to at least try . . . to run along that fence where he can and is able."]

Second, we agree with Appellant that the trial court abused its discretion when it "re-joined"[FN 4] count II (possession of a firearm by a convicted felon) with the other charges for purposes of trial. The trial court's decision to re-join count II was based on its determination that Appellant's status as a convicted felon in possession of a firearm was relevant to Appellant's claim of self-defense because his duty to retreat or not turned on whether he was engaged in an unlawful activity. However, as the cases cited above now make clear, it was irrelevant whether Appellant was engaged in an unlawful activity when he used the force at issue because his self-defense claim was based upon section 776.012(1), not section 776.013(3). Accordingly, the trial court should have severed count II from the remaining charges for purposes of trial.

*See State v. Vazquez*, 419 So. 2d 1088, 1090 (Fla. 1982); *Shuler v. State*, 929 So. 2d 645 (Fla. 1st DCA 2006); *Monson v. State*, 627 So. 2d 1301, 1302 (Fla. 1st DCA 1993).

> [FN 4: The trial court initially granted Appellant's motion to sever count II from the other charges for purposes of trial, but the court subsequently "re-joined" count II with the other charges over Appellant's objection.]

For these reasons, we reverse Appellant's judgment and sentence on counts I (manslaughter) and III (carrying a concealed firearm) and remand for a new trial on those counts consistent with this opinion. We affirm Appellant's judgment and sentence on count II (possession of a firearm by a convicted felon). *See Vazquez*, 419 So. 2d at 1091 ("While the proof of Vazquez' prior conviction unfairly prejudiced his defense to the [murder and unlawful display of a firearm] counts, that proof was both relevant and admissible and not unfairly prejudicial in the firearm possession count.").

AFFIRMED in part; REVERSED and REMANDED for a new trial in part.

(Ex. 11). *McGriff v. State*, 160 So. 3d 167 (Fla. 1st DCA 2015). The mandate issued April 24, 2015 (*id.*).

Petitioner was retried on the manslaughter and carrying a concealed firearm charges. On April 30, 2015, the jury found Petitioner not guilty of both charges (Ex. 12).

On May 11, 2015, Petitioner, through counsel, filed a motion to mitigate sentence in the state circuit court, pursuant to Rule 3.800(c) of the Florida Rules of

Criminal Procedure (Ex. 15 at 1–4). The circuit court denied the motion on July 29, 2015 (*id.* at 5).

On August 7, 2015, Petitioner filed a motion for post-conviction relief in the state circuit court, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. 16 at 1–12). The state circuit court summarily denied the Rule 3.850 motion on March 23, 2018 (*id.* at 13–15). Petitioner filed a notice of appeal in the First DCA Case No. 1D18-2041 (Ex. 17 at 1–2). The First DCA issued an order directing Petitioner to show cause why the appeal should not be dismissed as untimely (*id.* at 3–4). Petitioner filed a response to the show cause order (*id.* at 5–7). On June 21, 2018, the First DCA dismissed the appeal as untimely (*id.* at 9–10). *McGriff v. State*, 246 So. 3d 570 (Fla. 1st DCA 2018) (Mem). The mandate issued July 19, 2018 (*id.* at 11). On July 10, 2018, Petitioner filed a petition for belated appeal in the First DCA, Case No. 1D18-2979 (Ex. 18 at 1–8). The First DCA denied the petition on the merits on September 18, 2018 (*id.* at 9–10). *McGriff v. State*, 252 So. 3d 1287 (Fla. 1st DCA 2018) (Mem).

On September 12, 2016, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D16-4210, alleging ineffective assistance of appellate counsel (Ex. 19). The First DCA denied the petition on the merits on October 11, 2016 (*id.*). *McGriff v. State*, 201 So. 3d 810 (Fla. 1st DCA 2016) (Mem).

On February 23, 2017, Petitioner filed a petition for writ of habeas corpus in the First DCA, Case No. 1D17-0771, alleging the appellate court erred in affirming his conviction for firearm possession (Ex. 20 at 1–15). The First DCA denied the petition on the merits on March 28, 2017 (*id.* at 28). *McGriff v. State*, 224 So. 3d 215 (Fla. 1st DCA 2017) (Table).

On July 3, 2017, Petitioner filed a Notice to Invoke Belated Discretionary Jurisdiction seeking review, by the Florida Supreme Court, of the First DCA's decision in the direct appeal (Ex. 14). The state supreme court denied the petition for review on November 13, 2017 (*id.*). *McGriff v. State*, No. SC17-1272, 2017 WL 5247738, at *1 (Fla. Nov. 13, 2017).

Petitioner filed the instant federal habeas action on December 27, 2018 (ECF No. 1).

## II.    STANDARD OF REVIEW

Federal courts may grant habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254. Section 2254(d) provides, in relevant part:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

**(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

**(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The appropriate test was described by Justice O'Connor as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538

U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because the state court fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases.  *See Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was per se ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the

state court's decision could not be contrary to any holding from this Court." (internal

quotation marks and citation omitted)). If the state court decision is contrary to

clearly established federal law, the federal habeas court must independently consider

the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954,

127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next

determines whether the state court "unreasonably applied" the governing legal

principles set forth in the Supreme Court's cases. The federal court defers to the

state court's reasoning unless the state court's application of the legal principle(s)

was "objectively unreasonable" in light of the record before the state court.

*Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct.

2736, 159 L. Ed. 2d 683 (2004) (per curiam). In applying this standard, the Supreme

Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal
> judges are required to afford state courts due respect by overturning
> their decisions only when there could be no reasonable dispute that they
> were wrong. Federal habeas review thus exists as "a guard against
> extreme malfunctions in the state criminal justice systems, not a
> substitute for ordinary error correction through appeal." *Harrington*,
> *supra*, at 102–103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct.

770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on an unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011).  As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g.*, *Miller-El*, 537 U.S. at 340 (explaining that

a federal court can disagree with a state court's factual finding and, when guided by the AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

Only if the federal habeas court finds that the petitioner satisfied § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claim. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Within this framework, the court will review Petitioner's claims.

III.   PETITIONER'S CLAIMS

**Ground One:   "Petitioner claims a compound trial court procedural error resulting in erroneous jury instruction and deficient performance of direct review counsel."**

**Ground Two:   "Abuse of discretion by trial court by failing to sever possession of a firearm by convicted felon from second degree murder trial, despite previously being severed."**

Petitioner contends the First DCA's decision affirming his conviction for possession of a firearm by a convicted felon violated his federal due process rights

(ECF No. 1 at 18, 20–21, 23; ECF No. 26 at 2–13).[2]  Petitioner does not take issue with the First DCA's determinations that the trial court provided erroneous jury instructions on self-defense (Petitioner's defense to the second-degree murder charge), and the trial court erred by failing to sever the firearm possession charge from the other two charges (second-degree murder and carrying a concealed firearm) (*see* ECF No. 26 at 13).  Petitioner takes issue only with the First DCA's determination that the trial court's errors were harmless with respect to his conviction on the firearm possession charge (ECF No. 1 at 17–23; ECF No. 26 at 2–6).  Petitioner contends the First DCA should have reversed his conviction on the firearm possession charge and remanded for a new trial (*id.*).

Petitioner contends the erroneous jury instructions on his defense to the second-degree murder charge (i.e., self-defense) eliminated his sole defense to the firearm possession charge (i.e., necessity) (*see* ECF No. 1 at 18–23; ECF No. 26 at 3–6).  Petitioner contends the not guilty verdicts on the manslaughter and carrying a concealed firearm charges upon retrial, after severance of those charges from the firearm possession charge, are inconsistent with the guilty verdict on the firearm possession charge and demonstrate that his momentary possession of the firearm

---

[2]  When referencing the parties' pleadings, the court refers to the page numbers automatically assigned by the court's electronic filing system.

was necessary to defend himself (*id.*).  Petitioner contends if he had been tried on

only the firearm possession count, there is a reasonable probability he would have

been acquitted (*id.*).

Petitioner also presents a claim of ineffective assistance of appellate counsel

("IAAC") (*see* ECF No. 1 at 5, 21–22; ECF No. 26 at 6–13).  He contends appellate

counsel was ineffective for failing to argue that *State v. Vazquez*, 419 So. 2d 1088

(Fla. 1982) was distinguishable from his case because the prejudicial effect of the

trial court's errors (i.e., failing to sever and erroneously instructing the jury)

extended to the firearm possession charge, not just the other two charges (ECF No.

1 at 7; ECF No. 26 at 7–13).  Petitioner additionally faults his appellate counsel for

failing to seek review by the Supreme Court of Florida of the First DCA's decision

affirming his conviction for possession of a firearm by a convicted felon (*see* ECF

No. 1 at 7).

With respect to Petitioner's federal due process claim, the State asserts an

exhaustion defense (ECF No. 23 at 16–18, 21).  The State asserts Petitioner did not

exhaust his claim, because he did not argue, on direct appeal, the prejudicial effect

of the trial court's errors on the firearm possession charge; instead, Petitioner argued

only that the errors had a prejudicial effect on the trial of the other two counts (*id.*).

The State alternatively argues that to the extent Petitioner's claim is exhausted, it is without merit (*id.*).

The State's position on exhaustion of Petitioner's IAAC claim is unclear.  In one part of the State's response, the State appears to argue Petitioner did not exhaust the IAAC claim (*see* ECF No. 23 at 17), but in another part, the State states, "The only exhausted claim is ineffective assistance of appellate counsel" (*id.* at 18).  Notwithstanding the lack of clarity on exhaustion, the State argues Petitioner's IAAC claim is without merit (*id.* at 18–20).

The court will divide its discussion of Petitioner's claims into two parts.  The court will first address Petitioner's due process claim, and then address Petitioner's IAAC claim.

### A.    Due Process and Equal Protection

Petitioner presented a Fourteenth Amendment challenge to the First DCA's affirmance of his firearm possession conviction in his state habeas petition filed in First DCA Case No. 1D17-0771 (Ex. 20 at 1–15). The First DCA adjudicated the claim on the merits (*id.* at 28).  Petitioner satisfied the exhaustion requirement with respect to his Fourteenth Amendment due process claim.[3]

---

[3] Petitioner's state habeas petition in First DCA Case No. 1D17-0771 is the only state court pleading in which Petitioner presented a **federal** challenge to his firearm possession conviction

1.    Clearly Established Federal Law

With respect to severance, "an error involving misjoinder affects substantial rights and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Lane*, 474 U.S. 438, 449, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986) (internal quotation marks and citation omitted).

With respect to jury instructions, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  The question is "'whether the ailing instruction . . . so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S. Ct. 475, 116 L. Ed.2 d 385 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973)).  "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'"  *Boyde v. California*, 494 U.S. 370, 378, 110 S. Ct. 1190, 108 L. Ed. 2d

---

and argued that the not guilty verdicts upon retrial of the severed counts supported his claim of harmful error with respect to the effect of the trial court's errors (failing to sever the charges and giving erroneous jury instructions on self-defense) on the trial of the firearm possession charge. Petitioner did not present a **federal** challenge to his firearm possession conviction on direct appeal (*see* Exs. 8, 11) or in his Rule 3.850 motion (*see* Ex. 16 at 3–10).  Even if Petitioner presented a federal claim in his Rule 3.850 motion, which he did not, he procedurally defaulted the claim, and thus failed to **properly** exhaust it, by failing to file a **timely** appeal of the circuit court's decision (*see* Exs. 17, 18).  Therefore, neither of those proceedings produced an "adjudicat[ion] on the merits" of Petitioner's federal claim, for purposes of § 2254(d).

316 (1990) (quoting *Cupp*, *supra*, at 146–47).  If the charge as a whole is ambiguous,

the question is whether there is a "'reasonable likelihood that the jury has applied

the challenged instruction in a way' that violates the Constitution."  *Estelle*, *supra*,

at 72 (quoting *Boyde*, *supra*, at 380).

### 2.    Federal Review of State Court Decision

As previously discussed, Petitioner presented his federal claim to the First

DCA in his state habeas petition (Ex. 20 at 1–15).  The First DCA denied the petition

on the merits on March 28, 2017 (*id.* at 28).  *McGriff v. State*, 224 So. 3d 215 (Fla.

1st DCA 2017) (Table).

Where, as here, it is the state court's application of governing federal law that

is challenged, the decision must be shown to be not only erroneous, but objectively

unreasonable.  *See Waddington v. Sarausad*, 555 U.S. 179, 191, 129 S. Ct. 823, 172

L. Ed. 2d 532 (2009) (internal quotation marks and citations omitted); *see also*

*Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007)

("The question under AEDPA is not whether a federal court believes the state court's

determination was incorrect but whether that determination was unreasonable—a

substantially higher threshold").  Further, "the summary nature of a state court's

decision does not lessen the deference that it is due."  *Wright v. Moore*, 278 F.3d

1245, 1254 (11th Cir. 2002); *see also Richter*, 562 U.S. at 99 ("When a federal claim

has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision. *See Richter*, 562 U.S. at 98.  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See id.* at 102.

Here, a fair-minded jurist could agree with the First DCA's conclusion that the trial court's failure to sever the firearm possession charge from the other two charges and the court's erroneous jury instruction on self-defense did not deprive Petitioner of a fundamentally fair trial on the firearm possession charge.

Petitioner admits that his defense theory with respect to the firearm possession charge would have been the same at a severed trial—his momentary possession of the firearm was legal, because it was justified by necessity (*see* ECF No. 1 at 19, 23; ECF No. 26 at 3).  And although Petitioner vaguely alleges the firearm possession charge "involved a different set of facts" than the manslaughter charge (*see* ECF No.

1 at 4), he does not allege in what way the evidence admitted at a severed trial on only the firearm possession charge would have been any different than the evidence presented at the first trial on all three charges.  Evidence relating to the second-degree murder and carrying a concealed firearm charges was relevant in proving the firearm possession charge, so the jury still would have heard evidence of the circumstances surrounding Petitioner's shooting of the victim, Otis Harley.  And the jury still would have heard evidence related to the fact that Petitioner was previously convicted of a felony.  *See, e.g., Milton v. State*, 19 So. 3d 1143, 1145 (Fla. 1st DCA 2009) (noting that most courts who have considered the question have held the prosecution is entitled to prove a defendant's status as a convicted felon in a felon-in-possession case, even when the element is undisputed) (citations omitted); *United States v. Birdsong*, 982 F.2d 481, 482 (11th Cir. 1993) (same).

Additionally, if Petitioner had been retried on the firearm possession charge, the jury would have received the same instructions on the elements of that charge and Petitioner's sole defense to that charge, a necessity defense.  Petitioner did not argue, in state court or here, that there was any error in the jury instructions on the firearm possession charge or his necessity defense to that charge; rather, he argued that error occurred only with the self-defense instructions on the second-degree murder charge (*see* ECF No. 26 at 5–6).

The trial record demonstrates that both the written jury instructions and the trial court's oral instructions made clear that different justification defenses applied to the second-degree murder and firearm possession charges (*see* Ex. 1 at 157–72; Ex. 6 at 416–33).  The written jury instructions unambiguously grouped all of the instructions relevant to Count I—second degree murder—including the self-defense instructions (and the erroneous "unlawful activity" instructions) in one section (*see* Ex. 1 at 159–63).  The written instructions unambiguously grouped all of the instructions relevant to Count II—possession of a firearm by a felon—including the necessity instructions, in another section (*id.* at 164–65).

The trial court did the same when it orally instructed the jury (Ex. 6 at 416–25).  The court first provided all of the instructions relevant to the second-degree murder charge (*id.* at 416–23).  The court instructed the jury, "It is a defense to second-degree murder and manslaughter if the death of Otis Harley resulted from the justifiable use of deadly force"; and the court then set out the circumstances under which self-defense was available as a defense to the second-degree murder charge (*id.* at 419–23).

The court then provided all of the instructions relevant to the felon in possession of a firearm charge (Ex. 6 at 423–25).  The court instructed the jury:

Page 11, possession of firearm by felon.  To prove the—to prove the crime of possession of a firearm by a convicted felon, the State must prove the following two elements beyond a reasonable doubt.  Element 1, James McGriff had been convicted of a felony; and, Element 2, after the conviction, James McGriff knowingly possessed a firearm.

Convicted means that a judgment has been entered in a criminal proceedings [sic] by a court pronouncing the accused guilty.

A firearm is legally defined as any weapon which will, is designed to, or may be readily converted to expel a projectile by the action of an explosive.

Possession means that the object is in the hand of or on the person of the defendant.

Defense of necessity.  James McGriff's possession of a firearm after being convicted of a felony was a necessity and lawful if, one, James McGriff believed that he was in imminent danger of death or serious bodily injury; and, two, James McGriff did not intentionally or recklessly place himself in a situation in which it was probable that he would be forced to choose to possess a firearm; and, three, James McGriff did not have any reasonable, legal alternative to possessing a firearm; and, four, James McGriff acquired the firearm after the necessity arose and without any preconceived design to do so; and, five, James McGriff gave up possession of the firearm as soon as the necessity or apparent necessity ended.

Page 12.  Imminent means the danger is about to take place and cannot be avoided by using other means.  A threat of future harm is not sufficient to justify possession of a firearm by a person convicted of a felony, nor can the defendant use this defense if he continued to possess the firearm after the danger from the threat and harm had passed.

The reasonableness of the defendant's belief that a danger existed should be examined in light of all the evidence.  In considering

whether it was a necessity for the defendant to possess a firearm, you must judge him by the circumstances by which he was surrounded. The defendant's belief that possession of a firearm was a necessity can be mistaken and still be reasonable if the appearances were such that a reasonably prudent and cautious person under the same circumstances would have believed that the danger was real and that possession of a firearm was a necessity. Based on appearances, the defendant must have believed that the danger was real.

If you have a reasonable doubt as to whether the defendant's possession of a firearm after being convicted of a felony was a necessity, you should find the defendant not guilty. However, if you are convinced beyond a reasonable doubt that the defendant's possession of a firearm after being convicted of a felony was not a necessity, you should find the defendant guilty if all of the elements of the charge have been proved.

(Ex. 6 at 423–25).

Petitioner contends the erroneous instruction on his defense to the second-degree murder charge negated his necessity defense to the firearm possession charge (*see* ECF No. 26 at 6). But this argument is purely speculative. The jury is presumed to have followed the court's instructions, and there is no dispute that the instructions on the firearm possession charge and the necessity defense to that charge were correct statements of the law. A fair-minded jurist could conclude that Petitioner failed to show that the jury applied the erroneous self-defense instructions to the firearm possession charge or that the jury failed to follow the lawful instructions on Petitioner's necessity defense to the firearm possession charge.

Additionally, the fact that a jury found Petitioner not guilty of manslaughter and carrying a concealed firearm upon retrial does not render the guilty verdict on the firearm possession charge inconsistent or a violation of due process.  The verdicts were rendered by different juries in different trials.  And even if the verdicts were rendered in the same trial, nothing in the Constitution protects a defendant against inconsistent verdicts on separate charges.  *See Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L. Ed. 356 (1932) (holding that a criminal defendant convicted by a jury on one count cannot attack the conviction because it was inconsistent with the verdict of acquittal on another count; "[c]onsistency in the verdict is not necessary"); *United State v. Powell*, 469 U.S. 57, 65, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984) (recognizing the continued validity of *Dunn*'s holding); *Harris v. Rivera*, 454 U.S. 339, 345, 102 S. Ct. 460, 70 L. Ed. 2d 530 (1981) (denying state prisoner's habeas corpus challenge to his conviction based on inconsistent verdicts because "[i]nconsistency in a verdict is not a sufficient reason for setting it aside"); *see also United States v. Schlaen*, 300 F.3d 1313, 1317 (11th Cir. 2002) (noting it "is well-settled in federal criminal law" that consistent verdicts are not required) (*citing Dunn*, 284 U.S. at 393); *United States v. Wright*, 63 F.3d 1067, 1074 (11th Cir. 1995) (inconsistent verdicts, whether provided by a jury or a judge, are not subject to reversal merely because they are inconsistent).

A fair-minded jurist could conclude that Petitioner failed to show that his trial on the firearm possession charge was rendered fundamentally unfair by virtue of the trial court's errors in filing to sever the charge from the other two charges (second-degree murder and carrying a concealed firearm) and the court's erroneously instructing the jury on self-defense, Petitioner's defense to the second-degree murder charge. Therefore, the First DCA's rejection of Petitioner's federal due process challenge to his firearm possession conviction is entitled to deference under the AEDPA. Petitioner is not entitled to federal habeas relief on this claim.

### B.    IAAC

Petitioner contends his appellate counsel was ineffective for failing to argue that *State v. Vazquez*, 419 So. 2d 1088 (Fla. 1982) was distinguishable from his case because the prejudicial effect of the trial court's errors (i.e., failing to sever and erroneously instructing the jury) extended to the firearm possession charge, not just the other two charges (ECF No. 1 at 7; ECF No. 26 at 7–13). Petitioner additionally faults his appellate counsel for failing to seek review, by the Florida Supreme Court, of the First DCA's decision affirming his conviction for possession of a firearm by a convicted felon (*see* ECF No. 1 at 7).

As previously discussed, the State's position on exhaustion of Petitioner's IAAC claim is unclear. In one part of the State's response, the State appears to argue

that Petitioner did not exhaust his IAAC claim (*see* ECF No. 23 at 17), but in another part, the State states, "The only exhausted claim is ineffective assistance of appellate counsel" (*id.* at 18).

Upon review of Petitioner's state habeas petition alleging ineffective assistance of appellate counsel, the undersigned concludes that Petitioner fairly presented all aspects of his IAAC claim to the First DCA (*see* Ex. 19 at 1–15). Therefore, he satisfied the exhaustion requirement.

1.   Clearly Established Federal Law

The standard for evaluating a claim of ineffective assistance of appellate counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 746 (2000) (citation omitted). The two components of an ineffectiveness claim under *Strickland* are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. *Strickland*, 466 U.S. at 697. The focus of inquiry under the performance prong of *Strickland* is whether counsel's assistance was "reasonable considering all the circumstances." *Id.* at 691. Appellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim but, rather, may select from among them in order to maximize the likelihood of success of on appeal. *See Jones v. Barnes*,

463 U.S. 745, 753–54, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). To demonstrate prejudice, a petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to brief a particular issue, the petitioner would have prevailed on appeal. *See Robbins*, 528 U.S. at 285. The arguments omitted from the appeal must have been significant enough to have affected the outcome of the appeal. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

2.    <u>Federal Review of State Court Decision</u>

The First DCA summarily denied Petitioner's IAAC claim "on the merits" but without elaboration (Ex. 19 at 18). *McGriff v. State*, 201 So. 3d 810 (Fla. 1st DCA 2016) (Mem). This federal court must thus determine what arguments or theories could have supported the First DCA's decision, and then ask whether it is possible that fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.

The First DCA could have rejected Petitioner's IAAC claim on the ground that he failed to satisfy either prong of the *Strickland* standard. Petitioner contends appellate counsel should have argued that *State v. Vazquez*, 419 So. 2d 1088 (Fla. 1982) was distinguishable from his case because, unlike the defendant in *Vazquez*, he had a viable defense to the firearm possession charge.

In *Vazquez*, the defendant was charged with first degree murder, unlawful possession of a firearm by a convicted felon, and unlawful display of a firearm during the commission of a felony. 419 So. 2d at 1090. Vazquez moved to sever the firearm possession count, but the trial court denied the motion. *Id.* The jury returned verdicts convicting Vazquez of second-degree murder, possession of a

firearm by a convicted felon, and unlawful display of a firearm during the commission of a felony. *Id.* The Third DCA reversed and remanded for new trials on all counts. *Id.*

The Florida Supreme Court reviewed the Third DCA's decision and held that a prior conviction is a substantive element of the crime of possession of a firearm by a convicted felon, and that proof of conviction is relevant and admissible as to that charge unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading of the jury, or needless presentation of cumulative evidence. 419 So. 2d at 1090–91. The Florida Supreme Court held that since proof of a prior conviction was not relevant to the other two charges, the trial court's failure to sever the unlawful possession charge prevented the defendant from receiving a fair trial **on the other two charges (second-degree murder and unlawful display of a firearm during commission of a felony**). *Id.* (emphasis added). The Florida Supreme Court thus affirmed the Third DCA's decision on this point. *Id.* at 1191.

Importantly, the Florida Supreme Court reversed the Thirds DCA's decision to remand for retrial the firearm possession charge. 419 So. 2d at 1191. The Florida Supreme Court held:

> While the proof of Vazquez' prior conviction unfairly prejudiced his defense to the first and third counts, that proof was both relevant and admissible and not unfairly prejudicial in the firearm possession count. *See Parker v. State*[, 408 So. 2d 1037 (Fla. 1982)]. Moreover, while conflicting, the jury found sufficient credible evidence and testimony to convict Vazquez of the second count through the state's presentation of evidence regarding all three counts. In a trial of counts I and III, it would have had to present the same evidence.[FN 7: While evidence relating to all three counts would be relevant in proving count II, the evidence relating to count II is not relevant to I and III.]

419 So. 2d at 1091. The Florida Supreme Court thus found that retrial on the firearm possession charge was not necessary and quashed the Third DCA's remand regarding that charge. *Id.* at 1091–92.

Petitioner faults his appellate counsel for failing to argue that his case was distinguishable from *Vazquez* because he had a viable defense to the possession charge whereas Vazquez did not. The First DCA could have reasonably rejected this IAAC claim on the ground that there was no reasonable probability the result of Petitioner's direct appeal would have been different if appellate counsel had argued that *Vazquez* was distinguishable. In Petitioner's case, as in *Vazquez*, evidence relating to all three charges was relevant and admissible in proving the firearm possession charge. And in Petitioner's case, as in *Vazquez*, the jury found sufficient credible evidence to convict Petitioner on the firearm possession charge through the State's presentation of evidence regarding all three counts. The First DCA thus

could have reasonably rejected Petitioner's IAAC claim on *Strickland*'s prejudice prong.

For the same reason, the First DCA could have reasonably rejected Petitioner's argument that appellate counsel was ineffective for failing to seek review, by the Florida Supreme Court, of the First DCA's decision in his direct appeal. The reasonableness of the First DCA's rejection of this aspect of Petitioner's IAAC claim is buttressed by the fact that the Florida Supreme Court denied Petitioner's petition for belated review (*see* Ex. 14).

Petitioner failed to demonstrate that the First DCA's rejection of his IAAC claims was contrary to or an unreasonable application of clearly established federal law. Therefore, he is not entitled to federal habeas relief on his IAAC claims.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'"  *Buck v. Davis*, 580 U.S.—, 137 S. Ct. 759, 773, 197 L. Ed. 2d 1 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of  Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (ECF No. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 24<u>th</u> day of March 2020.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**